UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SAMMY LOPEZ, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-240 |
| | § | |
| WILLIAM STEPHENS,[1] | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Sammy Lopez is an inmate in the Texas Department of Criminal Justice - Criminal Institutions Division ("TDCJ-CID") and currently is incarcerated at the Terrell Unit in Rosharon, Texas. The actions about which he complains occurred in Nueces County, Texas. Proceeding *pro se*, Petitioner filed this petition pursuant to 28 U.S.C. §§ 2241 and 2254 on May 29, 2014.[2] The underlying conviction which is the subject of the petition is a 2011 Nueces County conviction for assault, family violence (repeat felony offender). Petitioner claims that his constitutional rights were violated during the trial and appellate proceedings.

On July 24, 2014 Respondent filed a motion for summary judgment which was denied without prejudice and Petitioner's application for habeas relief was stayed and

---

[1] The proper Respondent in this case is Petitioner's custodian, William Stephens, the Director of the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID). Rule 2(a), Rules Governing Section 2254 Cases. The Clerk shall substitute William Stephens as the proper Respondent. FED. R. CIV. P. 17(d).

[2] Petitioner stated under penalty of perjury that he placed his petition in the prison mail system on May 29, 2014 and it is considered filed as of that date. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) and Rule 3, Rules Governing Section 2254 Cases.

abated pending exhaustion of his state court remedies.   Petitioner then exhausted his remedies by filing an application for habeas corpus relief in state court, which was denied without written order on February 18, 2015.   Petitioner next reactivated his federal petition.

Respondent filed a second motion for summary judgment on June 12, 2015 to which Petitioner responded on July 9, 2015 (D.E. 35, 37).   For the reasons set forth below, it is recommended that Respondent's Motion for Summary Judgment be granted and Petitioner's Application for Habeas Corpus Relief be denied.   It is further recommended that any application for a Certificate of Appealability be denied.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is appropriate in this court because Petitioner was convicted in Nueces County, Texas.   28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## BACKGROUND

Following a plea of not guilty, Petitioner was tried by a jury in the 117th District Court of Nueces County, Texas.   At the trial, a Corpus Christi police officer testified that on February 24, 2011 he received a dispatch telling him to contact Christina Martinez regarding a disturbance in progress (III RR 28-29; D.E. 14-6 at 28-29).[3]   He described Martinez as distraught and emotionally upset and she stated that she had been assaulted by Petitioner, who had then run away on foot (III RR 29, 35; D.E. 14-6 at 29, 35).   The

---

[3] "RR" refers to the Reporter's Record in this case, located at D.E. 14.

officer observed damage to the door frame of the house and also to an internal door (III RR 35; D.E. 14-6 at 35).

Martinez's neighbor testified that she called 911 in February 2011 when she heard a female voice cry out, "Somebody help me, please." (III RR 40; D.E. 14-6 at 40).  When the neighbor looked outside she saw a woman walking up and down the sidewalk and crying (III RR 42; D.E. 14-6 at 42).

The victim, Christina Martinez, testified that she and Petitioner had been dating since the previous year and had been living together for some time (III RR 46-47; D.E. 14-6 at 46-48).  On the night of the incident, Martinez and Petitioner were home, drinking, when they began to argue over finances (III RR 48; D.E. 14-6 at 48-49).  He became violent and started pushing her and telling her that she could not tell him what to do.  He hit her in the face, knocked her down and kneed her.  Martinez began yelling and Petitioner kicked her.  He then ran off and Martinez ran outside (III RR 50-51; D.E. 14-6 at 50-51).  The police did not take any photos of Martinez's injuries (III RR 57-58; D.E. 14-6 at 57-58).

Following the assault, Martinez and Petitioner began to live together again (III RR 51; D.E. 14-6 at 51).  Petitioner was arrested for the assault in August 2011 and at the time, Martinez was living with Petitioner's mother (III RR 52; D.E. 14-6 at 52).

Petitioner and Martinez were involved in another incident in July 2011 and the police were called (III RR 58-59; D.E. 14-6 at 58-59).  During that incident Petitioner stole Martinez's car and took it to his mother's house.  When Martinez went to retrieve

the car, Petitioner broke the car windows and also hit Martinez with a brick (III RR 67; D.E. 14-6 at 67). Martinez later prepared an affidavit retracting a statement she made to police regarding the July 2011 incident (III RR 58-59; D.E. 14-6 at 58-59). Petitioner told Martinez what to write and his mother took her somewhere to sign the statement (III RR 60; D.E. 14-6 at 60).

Martinez wrote letters to Petitioner while he was in jail because she loved him and thought they could make it as a couple (III RR 65; D.E. 14-6 at 65). After she moved out of his mother's house she realized that she felt safer and better without him (III RR 67; D.E. 14-6 at 67).

The jury returned a guilty verdict (III RR 99; D.E. 14-6 at 99) and following a hearing on punishment, the court assessed a twelve-year sentence (IV RR 20; D.E. 14-7 at 20). Following the trial, Petitioner, represented by new counsel, filed a motion for new trial and a hearing was held. The motion was based on Petitioner's assertion that his trial attorney was ineffective because he failed to listen to recordings of conversations between Petitioner and the victim while Petitioner was in jail awaiting trial. Petitioner also alleged that the prosecutor had not turned the recordings over to Petitioner's attorney in a timely manner. The trial court heard evidence and denied the motion.[4]

Petitioner filed his application for habeas relief in federal court on May 29, 2014, arguing that his trial counsel was ineffective for the following reasons:

---

[4] The rest of the procedural history of this case is discussed at length in the Memorandum and Recommendation filed on October 29, 2014 (D.E. 19) and will not be repeated here.

(1) He failed to secure the testimony of witnesses;

(2) He failed to seek a continuance;

(3) He failed to compel the State to produce exculpatory evidence;

(4) He advised Petitioner not to testify on his own behalf;

(5) He failed to object to evidence of crimes and other bad acts by Petitioner and

(6) He failed to seek a jury instruction on the lesser included offense of assault.

Petitioner further alleges[5] that his appellate counsel was ineffective for the following reasons:

(7) He failed to diligently pursue the motion for new trial;

(8) He failed to include meritorious issues in his appellate brief;

(9) He failed to diligently prosecute a writ of habeas corpus;

(10) He failed to argue ineffective assistance of counsel at the motion for new hearing;

(11) He failed to request a continuance to review the tape recordings of jail conversations before the hearing on the motion for new trial;

(12) He failed to put exculpatory evidence to good use;

(13) He failed to make clear the legal basis on which the evidence would be admissible to impeach a specific witness;

(14) He failed to show how undisclosed exculpatory evidence was material at the guilt/innocence and punishment stages of the trial; and

(15) He failed to submit a brief drafted by Petitioner to the appellate court.

---

[5] Petitioner initially filed two federal habeas petitions and the allegations regarding his appellate counsel were included in Cause No. 2:14cv241.  The Court consolidated the cases under Cause No. 2:14cv240 on June 30, 2014 (D.E. 10).

After Petitioner reactivated his federal petition, he moved to supplement it and was granted permission to do so (D.E. 26, 27, 28).  In his amended petition, he makes the following claims:

(16) The prosecution withheld exculpatory evidence;

(17) The prosecution introduced perjured testimony from the alleged victim;

(18) Trial counsel was ineffective for failing to obtain recordings of telephone conversations between Petitioner and the victim;

(19) He was constructively denied effective assistance of counsel as described in *United States v. Cronic*, 466 U.S. 648 (1984);

(20) His trial counsel had a conflict of interest;

(21) The evidence was legally and factually insufficient to support the verdict;

(22) The prosecutor referred to Petitioner as a batterer in closing argument and his attorney did not object;

(23)  His sentence is unlawful;

(24) He was not allowed to testify in his own behalf;

(25) His attorney was ineffective because he failed to enter into evidence an affidavit from Martinez in which she recanted her allegations;

(26) Petitioner was not allowed to cross-examine the victim;

(27) The trial court did not have jurisdiction to hear the case; and

(28) The trial was fundamentally unfair.

In Respondent's motion for summary judgment he argues that the claims raised in Petitioner's supplemental petition are all barred by the statute of limitations and that the claims also are unexhausted and procedurally barred.  Respondent argues that the remaining claims are without merit.  In his response to the motion for summary judgment Petitioner contends that the supplemental claims are not time-barred because they relate back to the original claims.  He also asserts that all of his claims are exhausted. Petitioner also reiterated that he is entitled to habeas corpus relief on the merits.

## APPLICABLE LAW

### A.  Statute of Limitations and the Amended Petition

Respondent agrees that Petitioner's original federal petitions filed on May 29, 2014 were timely, but argues that the supplemental petition filed on April 27, 2015 was untimely and the claims asserted therein are subject to dismissal based on the statute of limitations.  Regarding the deadline for filing an application for writ of habeas corpus, the Anti-Terrorism and Effective Death Penalty Act (AEDPA) provides the following.

(d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant  was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244.  Petitioner filed his current application for writ of habeas corpus after the effective date of the AEDPA and so is subject to its provisions.  *Lindh v. Murphy*, 521 U.S. 320 (1997).

Petitioner's conviction became final on July 29, 2013, which was thirty days after the Thirteenth Court of Appeals affirmed his conviction.  Tex. R. App. Proc. 68.2.  He had one year from that date, or until July 29, 2014, to file his federal petition.  He timely filed his original federal petition on May 29, 2014.

Petitioner filed his supplemental petition on April 21, 2015, almost nine months after the filing deadline had passed.  Pursuant to Fed. R. Civ. P. 15(c), an amended petition relates back to the date of the original pleading when the law that provides the applicable statute of limitations allows relation back and the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading.  In *Mayle v. Felix*, 545 U.S. 644, 650 (2005), the Supreme Court examined Rule 15(c) as it relates to habeas corpus petitions and the AEDPA one-year statute of limitations and held that "an amended habeas petition  . . .

does not relate back (and therefore escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." When faced with an out-of-time supplement to a habeas application, it is not enough that the supplemental grounds violate the same constitutional provision as in the original complaint. *United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009). Rather, the court must look at the facts supporting the new claim. If the facts differ in time and type from those in the original complaint, the supplemental petition does not relate back and is time-barred. *Id.*

Most of the claims raised by Petitioner in his supplemental petition are based on facts that differ in time and type from those in his original pleading. The exceptions are Claims 16 (prosecution withheld exculpatory evidence) and 18 (counsel was ineffective for failing to obtain evidence of telephone recordings) which relate back to Claim 3 (counsel was ineffective for failing to compel state to produce exculpatory evidence) and Claim 24 (Petitioner was not allowed to testify on his own behalf) which relates back to Claim 4 (counsel advised Petitioner not to testify on his own behalf). The remainder of the supplemental claims rely on different facts than the allegations pleaded earlier. Accordingly, Claims 17, 19 through 23 and 25 through 28 were filed after the one-year statute of limitations expired and do not relate back to the original allegations.

Under the statute, the time during which a properly filed application for state court collateral review is pending shall not be counted toward any period of limitation. 28 U.S.C. § 2244(d)(2). *See also Coleman v. Johnson*, 184 F.3d 398 (5th Cir. 1999) (petitioner entitled to equitable tolling from the time he filed his state habeas application

until it was denied).  Petitioner's first three habeas petitions were dismissed because his direct appeal was still pending.  *See Ex Parte Lopez*, WR-78,291-01 at "Action Taken" page (D.E. 15-1 at 2); WR-78,291-02 at "Action Taken" page (D.E. 15-3 at 2) and WR-78,291-03 at "Action Taken" page (D.E. 15-4 at 2).  Such petitions are not considered properly filed and do not toll the statute of limitations.  *Larry v. Dretke*, 361 F.3d 890 (5th Cir. 2004).  Petitioner filed his fourth state habeas petition on November 18, 2014, after the limitations period had expired, and therefore that petition did not toll the statute of limitations either.  *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

Nor has Petitioner shown that he is entitled to equitable tolling on the time-barred causes of action.  "'The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.'"  *United States v. Petty*, 530 F.3d 361, 364 (5th Cir. 2008)(quoting *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000)(per curiam)).  The AEDPA one-year limitations period is not jurisdictional and is subject to equitable tolling at the discretion of the district court.  *Id.* (citing *United States v. Wynn*, 292 F.3d 226, 229-230 (5th Cir. 2002)).

Equitable tolling is permissible only in "rare and exceptional" circumstances.  *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998).  A prisoner proceeding *pro se* is not a "rare and exceptional" circumstance because it is typical of those bringing § 2254 claims.  *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000).

Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.  Excusable neglect does not support equitable tolling.  *Coleman*, 184

F.3d at 402.   A petitioner seeking to have the AEDPA limitations period tolled must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in the way of his timely filing his habeas petition. *Lawrence v. Florida*, 549 U.S. 327, 336 (2007).

Petitioner has failed to make such a showing.   He could have included the time-barred allegations in his first habeas petition and has not shown that any extraordinary circumstance prevented him from doing so.   Therefore, the supplemental claims described above are time-barred and not subject to equitable tolling.

## B.  Exhaustion of State Remedies

In the alternative, Respondent contends that Petitioner's supplemental claims are unexhausted and procedurally barred.   Under the applicable federal habeas corpus statutes, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."   28 U.S.C. § 2254(b)(1)(A).   Thus, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir.1995).   The exhaustion requirement "is not jurisdictional, but reflects the policy of federal-state comity, which is designed to give state courts the initial opportunity to consider and correct alleged violations of their prisoners' federal rights." *Morris v. Dretke*, 413 F.3d 484, 490-91 (5th Cir. 2005)(citing *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003)).   Exceptions exist only where there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect

the rights of the applicant.  *See* 28 U.S.C. § 2254(b)(1)(B).  A petitioner may exhaust his state court remedies either by filing a PDR or by seeking habeas relief in state court. *Myers v. Collins*, 919 F.2d 1074, 1076 (5th Cir. 1990).

If a petitioner fails to exhaust state court remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would find the claims procedurally barred, there is a procedural default for purposes of federal habeas.  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).  The Texas Court of Criminal Appeals applies the abuse of the writ doctrine regularly and strictly.  *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995)(citing *Ex Parte Barber*, 879 S.W.2d 889, 892 n. 1 (Tex.Cr.App. 1994)).  *See also* Tex. Code Crim. Proc. Art. 11.07 § 4 (subsequent habeas applications barred absent specific exceptions).

There are two exceptions to the procedural bar doctrine.  A federal court can review the merits of a habeas claim if a petitioner shows cause for and prejudice from the procedural default.  *Rocha v. Thaler*, 626 F.3d 815, 822 (5th Cir. 2010).  In addition, a federal court can address the merits of a claim if the petitioner can show that failure to do so would result in a fundamental miscarriage of justice.  *Id.*  A petitioner can satisfy the fundamental-miscarriage-of- justice exception by showing by a preponderance of the evidence that he is actually innocent of the crime of which he has been convicted.  *Id.* at 822-823.

A review of the record shows that Petitioner has not exhausted his state court remedies on the claims he brought in his supplemental petition that do not relate back to

his original petition.[6]   Nor has Petitioner argued that either of the exceptions to the

procedural bar applies in his case.   Therefore, Petitioner's claim regarding his appellate

counsel should be dismissed as unexhausted and procedurally barred.   Petitioner's

remaining claims are addressed below.

## C.  Merits

### 1.  Standard of Review

Under the AEDPA, a state prisoner may not obtain relief with respect to any claim

that was adjudicated on the merits in State court proceedings unless the adjudication of

the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the

state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on

a question of law or if the state court decides a case differently than the Court on a set of

materially indistinguishable facts.   Under the "unreasonable application" clause, a federal

habeas court may grant the writ if the state court identifies the correct governing legal

---

[6] To the extent Petitioner attempted to raise the issues to the state court via the
memorandum he attached to his state habeas petition, they were not properly exhausted.
Under Tex. R. App. P. 73.1, grounds not raised on the form prescribed by the Texas
Court of Criminal Appeals will not be considered by the state court.  *Ex Parte Walton*,
422 S.W.3d 720, 721 (Tex. Crim. App. 2014).  *See also Ex Parte Lopez*, No. WR-78,291-
05 at 9 (D.E. 24-4 at 9)(if grounds and summary of facts are not included on form they
will not be considered).

principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d (2000). Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001)(citing *Williams*, 120 S.Ct. at 1522-1523).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A federal habeas court must determine what theories or arguments supported, or could have supported, the state court's decision. Then it must ask whether it is possible that fair-minded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *Harrington*, 131 S.Ct. at 786. Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

The standard is very difficult to meet. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court litigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with

this Court's precedents.  It goes no farther." *Id.*  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787.

If a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).  A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006)(citations omitted).  This deference extends not only to express findings of fact, but to the implicit findings of the state court.  *Id.*  In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S.Ct. at 784.

### 2. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. *Id.*, 466 U.S. at 687-88, 104 S.Ct. at 2064.  Petitioner must show "significant prejudice"

in a noncapital context.  *Armstead v. Scott*, 37 F.3d 202 (5th Cir. 1994)(citing *Spriggs v. Collins*, 993 F.2d 85, 88, n. 4 (5th Cir. 1993)).

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Strickland*, 466 U.S. at 689.  A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  A petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  *Id.* at 690.

To show prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 695.

An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve.  *Strickland*, 466 U.S. at 689-690, 104 S.Ct. 2052. . . . Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence."  *Id.*, at 689, 104 S.Ct. 2052; . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.  *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

*Harrington*, 131 S.Ct. at 788.  In addition, federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  "When § 2254 (d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id.*

The same two-pronged test applies to claims of ineffective assistance of appellate counsel.  A petitioner must establish both that his appellate attorney's performance was objective unreasonable and also that there is a reasonable probability that but for the unreasonable conduct, the petitioner would have prevailed upon appeal.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

### (a)  Failure to Call Witness (Claim 1)

Petitioner asserts that his attorney should have called his parole officer to testify because Martinez had contacted his parole officer and told him that she had fabricated the allegations against Petitioner.  It is extremely difficult to prevail on a complaint of uncalled witnesses in a federal habeas petition because the presentation of evidence is a matter of trial strategy and allegations about the testimony of an uncalled witness are largely speculative.  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009)(citations omitted).  To prevail on such a claim, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."  *Id.*  The showing is required for both expert and lay witnesses.  *Id.*

At the motion for new trial, Petitioner's attorney testified that Martinez gave a notarized statement to Petitioner's parole officer recanting her allegations, but the attorney decided against offering the statement into evidence because he did not want the jury to know that Petitioner was on parole.  The attorney had filed a motion in limine to exclude evidence of Petitioner's criminal history and he believed that Petitioner would be prejudiced if the jury learned of his history (V RR 18).  The attorney also testified that he explained to Petitioner why he did not want to introduce the statement and Petitioner agreed that it should not be introduced (*Id.*).

The state habeas court found that Petitioner's attorney made a strategic decision to not call the parole officer as a witness.  *Ex Parte Lopez*, WR-78,291-05 at 145 (D.E. 24-6 at 42).  Although Petitioner asserts that he disagreed with the decision to not call the parole officer, Petitioner has not shown that the state habeas court's determination was contrary to Supreme Court law under the AEDPA standard.  Accordingly, summary judgment should be entered for Respondent on this issue.

**(b)  Recorded Jail Conversations (Claims 2, 3, 11, 12, 13, 14, 18)**

Several of Petitioner's claims concern telephone conversations recorded at the jail between Petitioner and the victim.  Petitioner claims that his trial attorney was ineffective because he did not listen to the conversations prior to trial, did not seek a continuance to listen to the recordings and failed to compel the State to produce the recordings. Petitioner also complained that the attorney who represented him in the hearing on the motion for new trial and on direct appeal was ineffective because he failed to request a continuance to review the tape recordings prior to the motion for new trial, failed to put

exculpatory evidence to good use, failed to make clear the legal basis on which the evidence would be admissible for impeachment purposes and failed to show how undisclosed exculpatory evidence was material at the trial.

At the motion for new trial, Petitioner's attorney testified that he filed a pre-trial motion seeking recordings of all telephone conversations between Petitioner and the victim (V RR 11; D.E. 14-8 at 11). The attorney also reviewed letters that the victim had written to Petitioner and the affidavit she wrote to Petitioner's parole officer. In the affidavit she said she had invented the later allegations that Petitioner broken the windows of her car and denied that had had ever hit her (V RR 12-16; D.E. 14-8 at 12-16).

Petitioner's attorney explained that at a pre-trial conference, the trial court ordered the prosecutor to produce a compact disc (CD) of the recordings by November 22, 2011, the Tuesday before Thanksgiving (V RR 20-23; D.E. 14-8 at 20-23). When the trial began the following Monday, Petitioner's attorney had not seen the CD and did not know whether the prosecutor had produced it. The attorney did not ask for a continuance so that he could review the CD. He did not receive the CD until after the trial was over and never listened to it (V RR 23-27; D.E. 14-8 at 23-27).

Petitioner's attorney testified that he discussed the recordings with Petitioner and based on what Petitioner told him, determined that the recordings would be consistent with the letters and the affidavit that Petitioner had given him. The attorney decided the recordings "probably wouldn't add anything" to Petitioner's defense and Petitioner agreed (V RR 24-25, 34; D.E. 14-8 at 24-25, 34).

On direct appeal, Petitioner raised an ineffective assistance of counsel claim based on his attorney's failure to listen to the recordings and the Thirteenth Court of Appeals denied relief, finding that Petitioner could not show prejudice because the impeachment evidence was cumulative of impeachment evidence available for trial. *Lopez v. Texas*, No. 13-12-00076-CR, 2013 WL 3326829 at *4 (Tex. App. – Corpus Christi 2013, no pet.)(located herein at *Ex Parte Lopez*, WR-78,291-05 at 137; D.E. 24-6 at 34). The state habeas court cited the Thirteenth Court of Appeals' opinion and found that Petitioner could not show that the recordings were material to his case or that he was prejudiced when they were not presented. *Ex Parte Lopez*, WR-78,291-05 at 145 (D.E. 24-6 at 42).

Regarding the first prong of the *Strickland* test, the attorney's failure to listen to the recordings or to seek a continuance to listen to them was objectively unreasonable. The central issue in the trial was whether the allegations of assault were true or whether the victim invented them. The recordings provided evidence on that issue and Petitioner's attorney should have listened to them prior to the trial.

However, in order to show that his attorney was ineffective, Petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. In Petitioner's appellate brief, his attorney described the relevant conversations between Petitioner and the victim. *Appellant's Brief* at 10-11, 14-15, *Lopez v. State*, No. 13-12-00076-CR (Tex. App. – Corpus Christi, July 25, 2012)(D.E. 14-2 at 10-11, 14-15). The statements made by the victim in the telephone conversations were essentially the same as those she made in the letters she wrote to Petitioner. The statements showed a loving

relationship between Petitioner and Martinez.   In addition, Martinez admitted being addicted to drugs and said that her addiction led to the problems between herself and Petitioner.   While the recordings show that at least initially Martinez was attempting to vindicate Petitioner on the charges, they also show that Martinez lost interest in vindicating Petitioner after she entered into a relationship with another man.   *Id.*

Petitioner cannot show that he was prejudiced by his attorney's failure to listen to or present the content of the recordings to the jury because the jury heard similar testimony when the victim admitted she had written an affidavit retracting her allegations against Petitioner and also wrote love letters to him while he was in prison.   Regarding the affidavit, Martinez explained that Petitioner told her what she needed to write and his mother took her to have the statement notarized.   Even if she made similar statements in the recorded conversations when neither Petitioner nor his mother were influencing her, she explained at the trial that despite the assault, she still loved Petitioner and thought he could change.   She also testified that while he was in jail she had nowhere else to go and wanted to continue staying with his mother (3 RR 52-53, 65; D.E. 14-6 at 52-53, 65).

The jury would have had the victim's explanation about her exculpatory statements to consider even if the recordings had been entered into evidence.   Thus, Petitioner cannot show that there is a reasonable possibility that the outcome of the trial would have been different if his attorney had listened to the recordings and offered them into evidence.   Accordingly, summary judgment should be entered for Respondent on all ineffective assistance of counsel claims against his trial and appellate counsel based on the failure to listen to the jail recordings.

**(c)  Advised Petitioner Not to Testify (Claims 4, 24).**

A defendant in a criminal case has a constitutional right to take the witness stand and testify in his own defense.  *Rock v. Arkansas*, 483 U.S. 44, 49 (1987).  Nevertheless, an attorney's decision about whether a defendant will testify is considered part of the trial strategy.  *United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002).  A decision about whether to have a defendant testify is a judgment call which should not be easily condemned with the benefit of hindsight.  *Id*. (citing *Robison v. Johnson*, 151 F.3d 256, 261 (1998)).  At the same time, it is not a permissible trial strategy, regardless of counsel's opinion, to override the ultimate decision of the defendant to testify contrary to counsel's advice.  *Id.*  When the record shows that a Petitioner knew he had the right to testify and wanted to do so but acquiesced to counsel's advice to the contrary, the only inquiry is whether the advice was sound trial strategy.  *Id.* at 453-454.

Petitioner asserts that trial counsel "coerced and misadvised" him into not testifying on his own behalf.  He told his attorney that he wanted to testify but his attorney coerced him into not testifying by telling him that if he did testify the jury would find him guilty because they would learn of his prior convictions.  Petitioner contends that he wanted to testify so that the jury could see his demeanor and hear his side of the story.  However, during the trial, Petitioner stated on the record that he knew that he had the right to testify but was advised by his attorney not to do so and agreed to follow that advice (III RR 71-72; D.E. 14-6 at 71-72).

The state habeas court found that Petitioner's counsel advised him not to testify but did not coerce him and that the advice was sound given his extensive history of

family violence.  *Ex Parte Lopez*, WR-78,291-05 at 145 (D.E. 24-6 at 42).  The record supports this finding and Petitioner has not shown that the decision was contrary to Supreme Court precedent under the AEDPA standard. Therefore, summary judgment should be entered for Respondent on this issue.

### (d) Failure to Object to Evidence of Crimes and Other Bad Acts (Claim 5)

Petitioner argues that when his attorney was cross-examining the victim and she referred to a second incident where she alleged Petitioner assaulted her, his attorney should have objected because the statement was unfairly prejudicial.  The record shows that Petitioner's attorney was cross-examining the victim about the second incident because after she reported it to police, she retracted the accusation (3 RR 59-60).  The state habeas court found the questioning was a defensive strategy to impeach the victim by showing that she had recanted her previous allegation, that she and Petitioner had an ongoing relationship, and that she admittedly lied to police.  *Ex Parte Lopez*, WR-78,291-05 at 146 (D.E. 24-6 at 43).  Petitioner has not shown that the state habeas court's conclusion is contrary to Supreme Court precedent under AEDPA.  Accordingly, it is recommended that summary judgment be entered for Respondent on this issue.

### (e)  Jury Instruction on Lesser Included Offense (Claim 6)

Petitioner asserts that his attorney was ineffective because he did not ask for a jury instruction on the lesser included offense of assault.  The state habeas court found that Petitioner was not entitled to a lesser-included offense instruction on plain assault, because he was convicted of plain assault.  *Ex Parte Lopez*, WR-78,291-05 at 146 (D.E. 24-6 at 43).

Petitioner was convicted of "assault family violence" in violation of Tex. Penal Code § 22.01. *Ex Parte Lopez*, WR-78,291-05 at 157 (D.E. 24-6 at 54). Normally such a violation is a misdemeanor, but because Petitioner had previously been convicted of a family violence offense, it was punished as a felony. Tex. Penal Code § 21.01(b). Petitioner cannot show that the state habeas court decision was contrary to Supreme Court precedent and summary judgment should be entered on this issue.

**(f) Motion for New Trial (Claims 7 and 10)**

Petitioner argues that his appellate attorney was ineffective because he failed to diligently pursue the motion for new trial and because he failed to argue ineffective assistance of counsel at the motion for new trial. His assertion is a conclusory allegation and insufficient to maintain a cause of action for habeas corpus relief. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

Moreover, the record belies Petitioner's allegation. The transcript of the hearing on the motion for new trial shows that Petitioner's post-conviction attorney elicited testimony from his trial attorney that the trial attorney had not listened to the recordings. The attorney also questioned the prosecutor regarding when and where he supplied the recordings to Petitioner's trial attorney. Petitioner's attorney argued to the court that it was disturbing that the trial attorney had not listened to more than 100 calls between Petitioner and the victim and added that the recordings most likely contained exculpatory material. Based on the record, Petitioner's allegations that his attorney was ineffective at presenting the motion for new trial are without merit and summary judgment should be entered for Respondent on this issue.

**(g)  Failed to Argue All Points Suggested by Petitioner (Claims 8 and 15).**

Petitioner contends that his appellate attorney failed to include meritorious issues in his appellate brief and failed to submit a brief drafted by Petitioner to the appellate court.  An appellate attorney who files a brief on the merits is not obligated to raise every non-frivolous claim, but may, and should, select from among them in order to maximize the likelihood of success on appeal.  *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  "The process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986)(citing *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)).

Petitioner's attorney raised two issues on appeal--whether the trial court erred in denying the motion for new trial based on the prosecution's failure to disclose jail recordings and whether trial counsel rendered ineffective assistance.  *Appellant's Brief* at 4, *Lopez v. State*, No. 13-12-00076-CR (Tex. App. – Corpus Christi, July 25, 2012)(D.E. 14-2 at 4).  Petitioner did not describe the issues he thought his attorney should address in either the brief the attorney filed or the *pro se* brief Petitioner wanted the attorney to file.  Without doing so, and without showing that failure to include the arguments was unreasonable or that there is a reasonable probability that but for the unreasonable conduct the petitioner would have prevailed upon appeal, Petitioner cannot show he is entitled to habeas relief.

In addition, there is no constitutional right to hybrid representation.  *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1996)(citing *McKaskle v. Wiggins*, 465 U.S. 168).

When a criminal appellant accepts the assistance of counsel he waives the right to file a *pro se* supplemental brief, even if he later objects to the attorney's appeal strategy or preparation of the brief. *Myers*, 76 F.3d at 1335. Petitioner has failed to show that he is entitled to habeas relief based on his attorney's failure to file *pro se* brief with the state appellate court.

### (h) Failure to Pursue Writ of Habeas Corpus (Claim 9)

Petitioner claims that his attorney failed to file a state habeas action on Petitioner's behalf and he was forced to file it himself. There is no federal constitutional right to counsel on habeas review. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). The fact that Petitioner's attorney did not file a federal habeas action for him does not raise a constitutional issue and summary judgment should be entered for Respondent on this issue.

### (3) Failure to Disclose Exculpatory Evidence (Claim 16)

Petitioner argued in the alternative at his motion for new trial and in the instant matter that the prosecution failed to disclose the recordings made at the jail in violation of his right to due process. It is a violation of due process for the prosecutor to withhold evidence favorable to an accused upon request where the evidence is material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In order to show a *Brady* violation a petitioner must demonstrate that (1) the evidence at issue, whether exculpatory or impeaching, was favorable to the accused; (2) the evidence was suppressed by the State, either willfully or inadvertently and (3) prejudice resulted from the suppression. *Canales v. Stephens*, 765 F.3d 551, 574 (5th Cir. 2014).

Petitioner cannot meet this burden because he cannot show that the evidence was suppressed by the state or that prejudice resulted from the jury not hearing the evidence. Petitioner's trial was set to start on November 28, 2011, the Monday after Thanksgiving. At the motion for new trial, Petitioner's attorney testified that he asked that the recordings be provided by the Tuesday before Thanksgiving and the court ordered their production by that day (V RR 22; D.E. 14-8 at 22). Petitioner's attorney did not know when the recordings were actually made available because he did not try to obtain them on the Tuesday or Wednesday before the Thanksgiving holiday. Instead, after the trial he checked to see if he had discovery available on other cases and found that the CD was in the prosecutor's office (V RR 23-24, 33-34; D.E. 14-8 at 23-24, 33-34). He did not further pursue the recordings prior to the trial because he had already decided not to use them at trial (V RR 34-35; D.E. 34-35).

The prosecutor testified that although his office was ordered to produce the CD by the Tuesday before the holiday, he was sick that day and did not provide the CD (V RR 37-39; D.E. 14-8 at 37-39). When the prosecutor went to work the next day, the CD was in his box and he called and left a message at Petitioner's attorney's office to tell him it was available. The CD was not picked up by the time the prosecutor left for the day (V RR 39-40; D.E. 14-8 at 39-40). Petitioner's attorney did not remember receiving a call or message about the recordings (5 RR 33; D.E. 14-8 at 33).

The record shows that the prosecutor's office made the CD available by the Wednesday before Thanksgiving, albeit it one day later than ordered by the court. Petitioner's attorney could have obtained the CD prior to trial and therefore Petitioner

cannot show that the State suppressed the evidence. In addition, he cannot show prejudice because the jury heard similar evidence about how the victim recanted her accusations. Accordingly, Respondent is entitled to summary judgment on this *Brady* issue.

### D. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. See *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. Daniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S.Ct. at 1604 (emphasis added).

In Petitioner's case, it is recommended that some claims be dismissed on procedural grounds and some on the merits. Reasonable jurists would not find it debatable that some of Petitioner's claims are time-barred and unexhausted. Nor would jurists of reason debate denial of habeas relief on the merits of the remaining claims. Therefore it is further recommended that any request for a COA be denied because he has not made the necessary showing for issuance of a COA on either ground.

## RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 35) be granted. Claims 17, 19 through 23 and 25 through 28 should be dismissed at time-barred, unexhausted and procedurally barred. The

remaining claims should be denied on the merits. It is further recommended that a Certificate of Appealability be denied.

Respectfully submitted this 7th day of August, 2015.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).